**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
**No. 99-50837**

**In The Matter Of: PAUL A. GROTHUES;**
**MARILYN GROTHUES,**

Debtors,

**PAUL A. GROTHUES; MARILYN GROTHUES,**

Appellees,

versus

**INTERNAL REVENUE SERVICE,**

Appellant.

_____

**Appeal from the United States District Court**
**for the Western District of Texas**

_____

August 28, 2000

Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily at issue is whether taxes owed by two corporations, principally owned by Paul A. and Marilyn Grothues, were discharged in the Grothues' personal Chapter 11 bankruptcy, despite:  the IRS claiming the Grothues are the alter egos of the corporations; and Ms. Grothues, following Chapter 11 plan-confirmation, pleading guilty to evading part of those taxes and, as part of her plea agreement, promising to pay *all of the taxes owed*.  The bankruptcy

court held the taxes were *not* discharged; the district court, they were.  We **AFFIRM** in **PART**, **REVERSE** in **PART**, and **REMAND**.

I.

At issue are fuel excise taxes owed by two diesel fuel wholesalers, Southwest Oil Company of Jourdanton (SWOJ) and Southwest Oil Company of Eagle Pass (SWEP).  The taxes were assessed from September 1986 to November 1994, for tax periods 1986-1990.

In March 1987, the Grothues filed a joint petition for personal bankruptcy under Chapter 11.  The IRS filed proofs of claim for employment taxes the debtors owed, as "responsible persons", but did *not* file proofs of claim for any fuel excise tax liabilities.  The plan of reorganization, confirmed in August 1992, provided, *inter alia*, for payment of the employment taxes, but did *not* make any provision for payment of the excise taxes.

In 1990, however, the IRS had begun a criminal investigation regarding those (the corporations') unpaid excise taxes.  And, approximately a year after plan-confirmation, Marilyn Grothues pleaded guilty to one count of a multi-count indictment for evading payment of excise taxes, in violation of 26 U.S.C. § 7201 ("willfully attempt[] in any manner to evade or defeat" payment of tax).  In her plea agreement, she agreed to pay *all taxes, penalties, and interest owed by the corporations*, stipulating, for sentencing purposes only, that the tax loss was approximately

2

$716,000. (The Government claimed the corporations owed over $4 million.) Accordingly, in November 1993, the district court ordered, as a condition of sentence, that Ms. Grothues "pay all taxes, penalties and interest due and owed".

Ms. Grothues failed to do so. In March 1996, in an effort to collect the amount due, the IRS filed notices of tax liens against the Grothues' property, identifying the Grothues as the corporations' alter egos or nominees. It then issued notices of intent to levy on some of the Grothues' real property.

To stop the sale of their property, the Grothues filed this adversary action in bankruptcy court, maintaining that, pursuant to 11 U.S.C. § 1141(d)(1) (*general discharge of pre-confirmation debts upon plan-confirmation*), *any personal liability they might have had* for the excise taxes had been discharged in 1992, when their Chapter 11 plan was confirmed. They also challenged the legality and amount of taxes owed.

The IRS moved for summary judgment, asserting that, pursuant to 11 U.S.C. § 1141(d)(2) (*debts listed in 11 U.S.C. § 523 non-dischargeable as to individual debtors*), the taxes-owed were excepted from discharge. It relied upon subparts (A) and (C) of § 523(a)(1). The former is for taxes specified in 11 U.S.C. § 507(a)(8), including excise taxes; the latter, for taxes a "debtor ... willfully attempted in any manner to evade or defeat". In addition, the IRS moved to dismiss, for lack of jurisdiction, the

3

Grothues' challenges to the legality and amount of taxes owed, asserting those issues were *not* properly before the bankruptcy court.

Following a hearing on the motions in April 1997, the bankruptcy court ruled in favor of the IRS. It held that, *assuming the IRS had a bona fide pre-confirmation claim for the excise taxes*, it would *not* have been discharged, because Ms. Grothues could *not* "oppose a [§ 523(a)(1)(C)] finding of willful evasion of tax, in the face of having pled guilty to evasion of paying a tax". The court dismissed, for lack of jurisdiction, the Grothues' challenges to the legality and amount of taxes owed. And, it denied their motion for reconsideration.

Subsequent to the bankruptcy court's ruling, and on a date *not* found in the record at hand, the IRS, based upon its alter ego liability-theory, filed a complaint to foreclose its liens on the Grothues' property. *United States v. Marilyn Grothues*, No. SA-99-CA-148-OG (W.D. Tex.). (As discussed *infra*, the IRS contends the still-pending foreclosure action is the proper forum to determine the validity of that theory.)

Appealing from bankruptcy to district court, the Grothues contested the guilty-plea-precluded-discharge-holding, and pointed out the bankruptcy court's failure to differentiate Mr. Grothues, who was *not* charged with, or convicted of, tax evasion. *In re Grothues*, 245 B.R. 828, 829-30 (W.D. Tex. 1999). They also

4

appealed the lack-of-jurisdiction-ruling regarding the legality and amount of taxes owed. *Id.* at 830.

The district court reversed the bankruptcy court in part, holding the IRS' excise taxes claim had been discharged. *Id.* It reasoned that the IRS' "alter ego, nominee or related veil-piercing theory ... place[d] [its] claim outside of the context of ... [, *inter alia*,] § 523(a)(1)", because the IRS' claim was *not* for a tax, but for "an equitable remedy" in the nature of "a declaratory judgment that the Grothues' assets are available to satisfy" the corporations' tax debts. *Id.* at 832. (The court noted that, because of the non-retroactivity of the 1990 enactment of 26 U.S.C. § 4103, which provides for "responsible person" liability with respect to excise taxes, there was *no* such liability by which the Grothues could be held liable personally for the excise taxes, at the time the corporations incurred them. *See id.* at 831-32 & n.2.) The court affirmed the bankruptcy court's lack-of-jurisdiction-ruling regarding "the underlying tax liability". *Id.* at 830. (As discussed *infra*, that holding was *not* appealed by the Grothues.)

## II.

The IRS challenges the district court's holding its underlying claim was not "for a tax" and was, therefore, discharged. "Acting as a second review court", we examine *de novo* the bankruptcy court's conclusions of law; its fact-findings, only for clear error. *E.g., In re Johnson*, 146 F.3d 252, 254 (5th Cir. 1998).

5

The IRS had the burden of proving non-dischargeability by a preponderance of the evidence. *See* **Grogan v. Garner**, 498 U.S. 279, 287 (1991).

The principal issue is whether the IRS' underlying claim for the two corporations' unpaid excise taxes, made against the Grothues through an alter ego theory, falls within the § 523(a)(1)(C) discharge-exception, in the light of Ms. Grothues' pleading guilty to willful tax evasion, and her concomitant plea-agreement-promise to pay those taxes. And, if non-dischargeability applies for that reason to Ms. Grothues, is it equally applicable to Mr. Grothues?

## A.

The *district court's analysis* was fundamentally flawed, according to the IRS, because the alter ego theory is *not an independent cause of action*, but merely a remedy to enforce a claimed substantive right – here, to payment of taxes owed and non-dischargeable under § 523(a)(1). In this regard, the IRS notes the discharge provisions make *no* distinction between taxes incurred directly by a debtor's corporation, and those incurred indirectly by a debtor operating through an ineffective corporate form. It asserts that, as a matter of common sense, a debtor who has pleaded guilty to evading a tax should *not* be allowed to use bankruptcy law to avoid paying it, especially where, as here, the debtor promises, in a post-confirmation plea agreement, to pay the tax.

Concomitantly, the IRS contends the district court erred in relying on **In re Hurricane R.V. Park, Inc.**, 185 B.R. 610, 613-15 (Bankr. D. Utah 1995), which held the IRS violated Hurricane's discharge-injunction by filing post-confirmation tax liens against that *corporate debtor's* property (as the IRS did against the Grothues' property), based on, as here, an alter ego theory, and in an effort to collect taxes owed by an officer of the corporate debtor. The IRS reads **Hurricane** as inapplicable because, unlike the Grothues, Hurricane was a *corporate debtor;* the discharge-exception in 11 U.S.C. §§ 1141(d)(2) and 523(a)(1)(C), at issue here, applies only to *individual debtors*.

While conceding the IRS' alter ego theory is simply a remedy, *not* a claim *per se*, the Grothues assert the district court nevertheless correctly held the IRS' underlying claims are *not* tax claims because the Grothues had *no direct liability* for their corporations' taxes. To the Grothues, the relevant point from **Hurricane** is that the IRS' alter ego theory was *not* a tax claim.

As the Grothues concede, the IRS' alter ego theory is just one of several ways to pierce the corporate veil under the applicable Texas law. Its use does *not* alter the IRS' *underlying claim* for the unpaid excise taxes. *See* **In re S.I. Acquisition, Inc.**, 817 F.2d 1142, 1152 (5th Cir. 1987) (citing **Castleberry v. Branscum**, 721 S.W. 2d 270, 272 (Tex. 1986) ("alter ego *remedy* applies when there is such an identity or unity between a corporation and an

7

individual ... that all separateness between the parties has ceased and a failure to disregard the corporate form would be unfair or unjust") (emphasis added)); *Peacock v. Thomas*, 516 U.S. 349, 353 (1996) (veil-piercing simply method of assigning liability on "underlying cause of action").

And, as for the weight to accord *Hurricane*, § 523(a)(1)'s discharge exceptions were *not* before that court. They do *not* apply to *corporate debtors*. 11 U.S.C. § 1141(d)(2) (plan confirmation "does not discharge an *individual debtor* from any debt excepted from discharge under section 523") (emphasis added); *Fein v. United States*, 22 F.3d 631, 633 (5th Cir. 1994) (as to "individual debtors, Congress consciously opted to place a higher priority on revenue collection than on debtor rehabilitation") (citation omitted).

B.

Accordingly, the IRS has a claim for taxes. The Grothues challenge, on several fronts, the bankruptcy court's non-dischargeability holding, as well as asserting that, even if § 523(a)(1)(C) non-dischargeability applies to Ms. Grothues, the underlying reasoning is *not* applicable to Mr. Grothues.

1.

Notwithstanding the IRS' underlying claim being "for a tax", the Grothues maintain the bankruptcy court erred by basing non-dischargeability on Ms. Grothues' criminal conviction alone. They

8

assert ***In re Bruner***, 55 F.3d 195 (5th Cir. 1995), mandates a more extensive analysis. To them, it requires, *inter alia*, determining whether they had the *ability* to pay the taxes; and, in that regard, they note the 11 U.S.C. § 523(a)(1)(C) non-dischargeability standard is different from that for criminal tax evasion under 26 U.S.C. § 7201. Likewise, they base error on the bankruptcy court's holding *all* the taxes non-dischargeable, despite Ms. Grothues' pleading guilty to evasion for *only one* of the subject tax periods. Finally, they complain that the IRS introduced *no* summary judgment evidence to support its alter ego theory.

a.

Relying on ***In re Bruner***, 55 F.3d at 197, the Grothues contend that, for § 523(a)(1)(C) willful evasion, the bankruptcy court *must* find the debtor: (1) had a legal duty to pay the tax; (2) knew of such duty; and (3) "voluntarily and intentionally violated" it, having preliminarily assessed the debtor's financial ability to pay the tax. ***Id.*** We disagree. (We note, however, the elements of the three-prong test – duty; knowledge; and voluntary and intentional violation – seem implicit in Ms. Grothues' § 7201 criminal conviction, which required a "willful[] attempt[] ... to evade or defeat" payment of taxes.)

The central issue in ***Bruner***, 55 F.3d at 198-200, was whether § 523(a)(1)(C) willful evasion requires proof of an "affirmative act", a question on which the circuits are split. *Compare **In re***

9

*Toti*, 24 F.3d 806, 809 (6th Cir.) (§ 523(a)(1)(C) encompasses "both acts of commission and ... omission"), *cert. denied*, 513 U.S. 987 (1994), *with **In re Haas***, 48 F.3d 1153, 1158 (11th Cir. 1995) (nonpayment of taxes "alone" *not* within scope of § 523(a)(1)(C)), *abrogated in part by **In re Griffith***, 206 F.3d 1389, 1395-96 (11th Cir.), *petition for cert. filed*, 68 U.S.L.W. 3002 (U.S. 22 June 2000) (No. 99-2052).  In ***Bruner***, our court agreed with ***Toti***, but did so in *dictum*, because ***Bruner*** ruled that resolution of the issue was *not* necessary, in the light of the Bruners having committed "acts of omission and ... commission".  ***Bruner***, 55 F.3d at 200.

To the extent the Grothues raise this point, the same is true here.  In addition to Ms. Grothues' guilty plea conviction for *failing* to file a required excise tax return and to pay taxes she knew to be due, she pleaded guilty to

> *willfully attempt[ing] to evade and defeat a tax ... by making and causing to be made* false invoices for the sale of the fuel to be shown to the [IRS] auditors, and by collecting excise taxes from customers, and ... falsifying, and causing to be falsified, the books and records of [SWOJ] and indicating that certain of said sales were for purposes exempt from excise taxes, and all for the purpose of continuing the scheme to defeat the assessment of taxes and payment of the tax, in violation of Title 26, [U.S.C. §] 7201, and Title 18, [U.S.C. §] 2.

(Emphasis added.)

Because, with its summary judgment motion, the IRS submitted Ms. Grothues' plea agreement and a transcript of her sentencing

hearing, including the above, describing acts of omission *and* commission (such as falsifying records), this evidence was more than sufficient. Moreover, Ms. Grothues is estopped from denying she engaged in the charged conduct. *E.g.*, **Johnson v. Sawyer**, 47 F.3d 716, 722 n.13 (5th Cir. 1995) (§ 7201 conviction necessitates finding "defendant ... acted willfully and knowingly with specific intent to evade [a tax]" (citation and quotation marks omitted), estopping defendant from taking inconsistent position in civil action). *See* **In re Goff**, 180 B.R. 193, 199-200 (Bankr. W.D. Tenn. 1995) (debtor estopped from claiming discharge of certain taxes in the light of his plea bargain admission he willfully attempted to evade them). In short, Ms. Grothues "do[es] *not* qualify as the sort of 'honest debtor' the Bankruptcy Code is designed to protect". **Bruner**, 55 F.3d at 200 (emphasis added).

As to the lack of a finding that the Grothues had the ability to pay the taxes, the key § 523(a)(1)(C) determination is whether debtor's conduct is *willful.* Whether debtor has the ability to pay is, of course, an appropriate factor in making that determination, but it is *not* a litmus test. In any event, the Grothues have *not* asserted they could *not* pay the taxes.

b.

Regarding the non-dischargeability of the taxes for which Ms. Grothues did *not* plead guilty to evading, the IRS maintains that, despite her pleading guilty to such evasion for *only* one taxable

11

period, she admitted her "willful" conduct extended beyond that period. The IRS bases its position on Ms. Grothues' stipulating in her plea agreement that she caused a tax loss to the Government greater than for that one period. In this regard, and although the record evidence focuses on Ms. Grothues' willful conduct in the second quarter of 1988, she stipulated her conduct caused a loss of approximately $716,000, well above the $80,000 associated with her one-tax-period conviction and obviously encompassing other tax periods (other taxes). And, in her plea agreement, she promised to pay *all* of the corporations' unpaid excise taxes, an integral provision made a condition of her sentence.

In the light of these unique circumstances, we hold that, *as to Ms. Grothues*, these other taxes are also non-dischargeable.[*] As a general matter, holding otherwise might — indeed, probably would — encourage unscrupulous debtors to use bankruptcy law as a shield against enforcement of criminal proceedings promises they had *no* intention of keeping, but nevertheless made, in order to gain a more favorable plea agreement/sentence.

c.

---

[*]Accordingly, we need *not* address the IRS' alternative reliance on the discharge-exception in § 523(a)(7) (debts "for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit"). In any event, we would *not* consider it, because the IRS did *not* raise this issue in its opening brief here, thereby abandoning it. *See infra.*

In addition to pointing to the IRS' *not* submitting summary judgment evidence supporting its alter ego theory, the Grothues assert Ms. Grothues was ordered only to pay taxes "due and owing" to the IRS, and maintain there has been *no* determination she owed any taxes due.

The Grothues' liability for the taxes – and, concomitantly, the validity of the IRS' alter ego theory – are *not* before us.  As noted, the Grothues did *not* appeal the district court's affirming the bankruptcy court's no-jurisdiction-holding as to the legality and amount of taxes owed.  These issues are for the earlier-referenced foreclosure proceeding.

2.

Finally, all parties agree Ms. Grothues' plea agreement and guilty-plea conviction do *not* support § 523(a)(1)(C) non-dischargeability of Mr. Grothues' tax debt (if any).  Nevertheless, the IRS urges holding its tax claim non-dischargeable for him as well, pursuant to the discharge exception for certain excise taxes under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8).  As discussed *supra*, the former is a discharge-exception for taxes specified in the latter.  Under § 507(a)(8), excise taxes are a priority claim if they concern a "transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition".  11 U.S.C. § 507(a)(8)(E)(i).

13

The IRS advanced this contention in bankruptcy, as well as in district, court; neither addressed it.  The IRS, however, did *not* raise this issue in its opening brief here.  Therefore, it is deemed abandoned.  *E.g.*, **Yohey v. Collins**, 985 F.2d 222, 225 (5th Cir. 1993).

### III.

For the foregoing reasons, we **REVERSE** that part of the district court's judgment as to Marilyn Grothues; **AFFIRM** the remainder; and **REMAND** this action for entry of a revised judgment or for such other proceedings as may be appropriate.

**AFFIRMED in PART; REVERSED in PART; and REMANDED**