

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-8-1997

# In Re: Henry Fegeley

Precedential or Non-Precedential:

Docket 96-5428

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"In Re: Henry Fegeley" (1997). *1997 Decisions*. Paper 150.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/150

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 8, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-5428

IN RE: HENRY FEGELEY;
ANNMARIE FEGELEY,
Debtors

UNITED STATES OF AMERICA

v.

HENRY FEGELEY; ANNMARIE FEGELEY

HENRY FEGELEY,
Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 95-cv-05254)

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 12, 1997

BEFORE: COWEN, NYGAARD and GARTH
Circuit Judges

(Filed July 8, 1997)

Bruce Williams, Esq.
28 Tanner Street
Haddonfield, New Jersey 08033

COUNSEL FOR APPELLANT
Henry Fegeley

Gary D. Gray, Esq.
Laurie Snyder, Esq.
Karen D. Utiger, Esq.
United States Department
of Justice
Tax Division
P.O. Box 502
Washington, D.C. 20044

COUNSEL FOR APPELLEE
United States of America

**OPINION OF THE COURT**

COWEN, Circuit Judge.

Appellant Henry Fegeley appeals the judgment of the district court, which reversed the judgment of the bankruptcy court. The bankruptcy court determined that Fegeley's federal tax liabilities were dischargeable. Fegeley argues that in order to except federal taxes from discharge in bankruptcy pursuant to § 523(a)(1)(C) of the Bankruptcy Code, the Government must demonstrate that he possessed a fraudulent intent. He asserts that willful failure to file timely tax returns for 1983, 1984, and 1985, and willful failure to timely pay his taxes for those years, is insufficient to support the conclusion that he willfully attempted to evade or defeat his taxes for those years. The Government argues that the district court was correct in finding that the willful failure of Fegeley to file tax returns, together with his willful failure to pay taxes despite his financial ability to do so, constitutes evasion under the Bankruptcy Code. The Government asserts that the district court correctly concluded that nondischargeability under § 523(a)(1)(C)

2

does not require a finding of fraudulent intent. We will affirm.

Fegeley is a 50-year-old high school graduate who was employed as a salesman in the 1980s. He was paid both a salary and commission, and was also reimbursed for his expenses. Prior to the tax year 1983, Fegeley regularly filed his federal income tax returns and paid his tax liabilities, if any, in a timely manner.

In the years 1983, 1984, and 1985, Fegeley's income increased substantially. During these years, Fegeley made lavish expenditures. He failed to file federal income tax returns or to pay the taxes owed for these years. At the time the taxes were due, he had sufficient funds on deposit in his bank accounts to pay his tax liability.

Fegeley filed an application in 1985 for an extension of time to file his tax return with the IRS. In the application Fegeley substantially underestimated the amount of taxes owed. He also failed to pay the estimated tax liability when he returned the application. Also in 1985, Fegeley requested that his employer pay him as an independent contractor instead of as a salaried employee. His employer did so and, consequently, discontinued withholding taxes from Fegeley's income.

Fegeley was communicated with by the Criminal Investigation Division of the IRS in 1987. After being communicated with the IRS agents, he filed his 1983, 1984, and 1985 income tax returns. The Government determined that the returns were reasonably accurate and complete, and has not alleged that any of the returns are fraudulent.

In 1989, the Government filed a three-count information against Fegeley, charging him with willful failure to file his income tax returns for 1983, 1984, and 1985 pursuant to I.R.C. § 7203. Fegeley pled guilty to count three which related to the 1985 tax return. The remaining two counts were dismissed.

Fegeley and his wife filed a joint Chapter 7 bankruptcy petition in 1991, and were thereafter granted a discharge in bankruptcy pursuant to § 727 of the Bankruptcy Code. In 1992, the IRS demanded payment of income tax liabilities

3

for the years 1983, 1984, and 1985. On motion by Fegeley and his wife, the bankruptcy court reopened the bankruptcy proceeding and reimposed the automatic stay pursuant to § 362(a) of the Bankruptcy Code. The Fegeleys then commenced the present adversary proceeding seeking, inter alia, a determination that the 1983, 1984, and 1985 tax liability had been discharged in bankruptcy.

The Government argued that the tax liability could not be discharged in bankruptcy because § 523(a)(1)(C) of the Bankruptcy Code prohibits discharge of taxes that the debtor willfully attempted to evade or defeat in any manner. The matter was tried before the bankruptcy court. At the conclusion of the trial, the bankruptcy court set forth its findings of fact and conclusions of law. The bankruptcy court stated that Fegeley "clearly knew that he had to file. He clearly neglected to file, failed to file, suffered criminal consequence[s] for his failure to file. And he failed to pay the taxes." App. at 14. The bankruptcy court also found that Fegeley "probably had enough money to pay th[e] taxes[,]. . . spent too much[,] . . . was much too lavish[, and] . . . didn't make good judg[ ]ments about the allocation of his resources." App. at 17.

Despite these findings, the bankruptcy court entered judgment for the Fegeleys holding that the Government failed to prove that the Fegeleys attempted to evade or defeat their 1983-85 income taxes and that such taxes are not excepted from discharge pursuant to § 523(a)(1)(C).1 The bankruptcy court held that Fegeley's knowing failure to file income tax returns, in conjunction with his failure to pay those taxes even though he had the financial resources to do so, did not constitute an attempt to evade or defeat his tax liability for 1983, 1984 and 1985.

The Government appealed the bankruptcy court's decision to the district court. The district court reversed, holding that the tax liabilities were not dischargeable under

_____

1. The bankruptcy court found that there was "no support for the proposition that Mrs. Fegeley willfully attempted to evade or defeat the taxes." Supp. App. at 134. The Government did not appeal the bankruptcy court's order as it related to Mrs. Fegeley. Accordingly, this appeal relates only to the liability of Mr. Fegeley.

4

§ 523(a)(1)(C). In rendering its decision, the district court did not determine that the factual findings of the bankruptcy court were clearly erroneous. Indeed, the district court adopted the factual findings of the bankruptcy court. Rather, the district court held that the bankruptcy court erred as a matter of law by failing to conclude that Fegeley's intentional failure to file income tax returns when he was well aware of his obligation to do so, together with his failure to pay taxes when he had the resources to pay those taxes, was sufficient to prove that he willfully attempted to evade or defeat his taxes. This appeal followed.

I.

Because the bankruptcy court, rather than the district court, was the trier of fact in this case, "[w]e are in as good a position as the district court to review the findings of the bankruptcy court, so we review the bankruptcy court's findings by the standards the district court should employ, to determine whether the district court erred in its review." Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir. 1981). We review basic and inferred facts under the clearly erroneous standard. Id. We exercise plenary review over legal issues. In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994). In reviewing ultimate facts, which are a "mixture of fact and legal precept", we must "break down" the questions of law and fact and "apply the appropriate standard to each component." Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992)(quoting Universal Minerals, 669 F.2d at 102-03, and In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989)).

II.

When a debtor files under Chapter 7 of the Bankruptcy Code, the debtor is generally granted a discharge from all debts arising prior to the filing of the bankruptcy petition. 11 U.S.C. § 727(b) (1994); see also In re Birkenstock, 87 F.3d 947, 950 (7th Cir. 1996); In re Toti, 24 F.3d 806, 808 (6th Cir. 1994). The remedial purpose of the Bankruptcy Code is "to provide a procedure by which certain insolvent

5

debtors can reorder their affairs, make peace with their creditors, and enjoy `a new opportunity in life [and] a clear field for future effort, unhampered by the pressure and discouragement of pre[-]existing debt.'" Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 659 (1991) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699 (1934)). However, this "fresh start" policy provided by the Bankruptcy Code applies only to the "honest but unfortunate debtor." Id. at 286-87, 111 S.Ct. at 659 (quoting Local Loan, 292 U.S. at 244, 54 S.Ct. at 699).

The Code excepts certain liabilities from discharge. Section 523(a)(1)(C) provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--

(1) for a tax or a customs duty--

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523(a)(1)(C) (1994) (emphasis added). These exceptions to discharge are to be strictly construed in favor of the debtor. Dalton v. I.R.S., 77 F.3d 1297, 1300 (10th Cir. 1996). Moreover, "the burden of proving that the debtor's tax liabilities are nondischargeable under § 523(a)(1)(C) is on the United States." Berkery v. Commissioner, 192 B.R. 835, 840 (E.D. Pa. 1996), aff'd, 111 F.3d 125 (3d Cir. 1997). The Government must prove by a preponderance of the evidence that the debtor made fraudulent returns or willfully attempted to evade his taxes. See Grogan, 498 U.S. at 291, 111 S.Ct. at 661.

The Government does not allege that Fegeley filed fraudulent returns. The sole issue before us is whether Fegeley "willfully attempted . . . to evade or defeat" his income taxes for the tax years 1983, 1984, and 1985 within the meaning of the second part of § 523(a)(1)(C).

Our analysis begins with an interpretation of the second prong of § 523(a)(1)(C). We must interpret provisions of "the Bankruptcy Code according to the plain meaning of [the] individual provision as long as the provision's language is unambiguous." Toti, 24 F.3d at 809 (citing United States v.

6

Ron Pair Enters., Inc., 489 U.S. 235, 240-41, 109 S.Ct. 1026, 1030 (1989)). "Where statutory language is not expressly defined, that language should be given its common meaning." Id. (citing Burlington N.R.R. Co. v. Oklahoma Tax Comm'n, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860 (1987)). "The plain language of the second part of § 523(a)(1)(C) comprises both a conduct requirement (that the debtor sought `in any manner to evade or defeat' his tax liability) and a mental state requirement (that the debtor did so `willfully')." Birkenstock, 87 F.3d at 951 (quoting 11 U.S.C. § 523(a)(1)(C)).

Looking first to the conduct requirement, it is evident that "`Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation.'" Dalton, 77 F.3d at 1301 (quoting Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 368 (1943)). We must give weight to the fact that Congress included the phrase "in any manner" in the statute. Nonetheless, we should abide by the limitation set out by the Court of Appeals for the Eleventh Circuit in In re Haas, 48 F.3d 1153, 1158 (11th Cir. 1995):"[A] debtor's failure to pay his taxes, alone, does not fall within the scope of section 523(a)(1)(C)'s exception to discharge in bankruptcy." See also Dalton, 77 F.3d at 1301. Instead, we should look to nonpayment of taxes as "relevant evidence which [we] should consider in the totality of conduct to determine whether or not the debtor willfully attempted to evade or defeat taxes." Id.

Although many of the published decisions excepting taxes from discharge under § 523(a)(1)(C) involve debtors who actually did engage in some type of affirmative conduct calculated to evade or defeat payment of their taxes, we observe that the majority of courts have found that affirmative conduct by a debtor designed to evade or defeat a tax is not required. Rather, § 523(a)(1)(C) encompasses acts of culpable omission as well as acts of commission. See, e.g., In re Bruner, 55 F.3d 195 (5th Cir. 1995); In re Toti, 24 F.3d 806 (6th Cir. 1994). The Court of Appeals for the Sixth Circuit has held that "failure to file a tax return and failure to pay a tax fall within the definition in

7

§ 523(a)(1)(C) of a willful attempt to evade or defeat a tax liability." Toti, 24 F.3d at 809. The debtor in Toti, like the debtor in the instant case, "did not file federal income tax returns or pay federal income taxes, despite the fact he knew he was liable for the taxes and . . . had the wherewithal to pay his taxes during" at least some of the eight years in which he did not file. Id. at 807. Similar to Fegeley, Toti "was indicted on three counts of failing to file federal income tax returns." Id. He also pled guilty to one of the counts relating to one of the tax years, and the government dismissed the remaining two counts. Id.

The Court of Appeals for the Sixth Circuit held that because Toti "had the wherewithal to file his return and pay his taxes, but . . . did not fulfill his obligation," he did "not fall within the category of honest debtors." Id. at 809. In the instant case, the bankruptcy court found that Fegeley "clearly knew that he had to file. He clearly neglected to file, failed to file, suffered criminal consequence[s] for his failure to file. And he failed to pay the taxes." App. at 14. The bankruptcy court also found that Fegeley "probably had enough money to pay th[e] taxes[,]. . . spent too much[,] . . . was much too lavish[, and] . . . didn't make good judg[ ]ments about the allocation of his resources." App. at 17.

Based upon the factual findings of the bankruptcy court, the district court correctly held that Fegeley's intentional failure to file his tax returns, together with his failure to pay taxes when he had the resources to do so, was sufficient to prove that he attempted to evade or defeat his tax liabilities for the tax years at issue. By adopting this rule of law, we need not address the remaining factual findings of the bankruptcy court. Therefore, we need not evaluate other conduct of Fegeley, such as underestimation of tax liability by 50% and changing of filing status from that of employee to independent contractor, which more properly may have been construed as affirmative steps in a scheme to evade taxes.

We now turn to the required mental state. Fegeley argues that the willfulness language in the second prong of § 523(a)(1)(C) should be interpreted consistently with the criminal provisions of the Internal Revenue Code, and that

8

"proof of fraud is a necessary element of [that prong]." Appellant's Br. at 15. He argues that "such fraud be proved by `badges of fraud' whether they be in the form of affirmative acts or culpable omissions." Id.

The majority of courts to address this issue have not required any such showing. Instead, they have adopted the test for "civil willfulness." In doing so, they "have interpreted `willfully,' for purposes of § 523(a)(1)(C), to require that the debtor's attempts to avoid his tax liability were `voluntary, conscious, and intentional.'" Birkenstock, 87 F.3d at 952 (quoting Toti, 24 F.3d at 808); see also Dalton, 77 F.3d at 1302; Bruner, 55 F.3d at 199. Thus, to prevail, the Government need establish only that:

(1) [the] debtor had a duty to file income tax returns;

(2) [the] debtor knew he had such a duty; and

(3) [the] debtor voluntarily and intentionally violated that duty.

In re Semo, 188 B.R. 359, 362 (Bankr. W.D. Pa. 1995); see also Bruner, 55 F.3d at 197.

It is undisputed that Fegeley had a duty to file tax returns. The bankruptcy court found that he knew that he had this duty and voluntarily failed to file his returns. App. at 12, 14. The bankruptcy court also found that Fegeley "should have paid [his] taxes . . . [and] probably had enough money to pay those taxes." App. at 17. The bankruptcy court erred by concluding that § 523(a)(1)(C) "requires more," i.e., that the Government demonstrate a "failure to report income, transfer of assets,[or] falsification of records" by the debtor. Id.

Fegeley had a duty under the tax law, knew he had that duty, and voluntarily and intentionally violated that duty. He also had the financial ability to discharge that duty. The district court correctly found this to be a sufficient basis to prove that Fegeley willfully attempted to evade or defeat his taxes for 1983, 1984, and 1985.

III.

We will affirm the May 10, 1996, judgment of the district court reversing the bankruptcy court's August 7, 1995,

9

order. The case will be remanded to the district court with instructions to remand the matter to the bankruptcy court with a direction that the bankruptcy court enter an order denying the application by Fegeley that his tax liability for 1983, 1984, and 1985 be discharged.

Costs taxed against appellant.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

10