**IN RE Ross TUDISCO, Debtor,**

**Ross Tudisco, Plaintiff–Appellant,**

**v.**

**United States of America, Dept. of Treasury, Internal Revenue Service, Defendant–Appellee.**

**Docket No. 98–5075**

United States Court of Appeals, Second Circuit.

Submitted June 25, 1999.

Decided July 7, 1999.

---

Ross Tudisco, pro se, appellant.

Varuni Nelson, Kevin P. Mulry, Assistant United States Atorneys, Of Counsel, for Zachary W. Carter, United States Attorney, Eastern District of New York, for defendant-appellee United States of America, Department of Treasury, Internal Revenue Service.

Before: CALABRESI and PARKER, Circuit Judges, and TRAGER, Judge.*

CALABRESI, Circuit Judge:

Plaintiff-appellant Ross Tudisco appeals from the judgment entered in the United States District Court for the Eastern District of New York (Leonard D. Wexler, Judge) affirming the final judgment of the United States Bankruptcy Court for the Eastern District of New York (Francis G. Conrad, Judge). The bankruptcy court had dismissed Tudisco's adversary proceeding against the United States Department of Treasury, Internal Revenue Service ("IRS"). We affirm.

---

* The Honorable David G. Trager, Judge of the United States District Court for the Eastern District of New York, sitting by designation.

1. The entry for this date on the Bankruptcy Court docket reads: "Court finds that all ex-

## BACKGROUND

On January 3, 1996, Tudisco's debts were discharged in a Chapter 7 bankruptcy action. This case arises in the aftermath of that discharge, as Tudisco sought, in two parallel Chapter 13 proceedings, to stave off tax collection efforts by the IRS.

After the termination of the Chapter 7 case, Tudisco initiated a Chapter 13 proceeding, in order to develop a plan for adjusting his debts ("plan proceeding"). During the course of the plan proceeding, which came before Judge Eisenberg, Tudisco filed an objection to a claim on his assets by the IRS. He did so on two grounds: (1) that his tax liability for the years 1985 through 1991 had been discharged in his prior Chapter 7 bankruptcy ("dischargeability issue") and (2) that his only assets—his pension—were exempt property and hence not subject to a tax lien ("lien issue"). After both parties had briefed these questions, Tudisco began a separate Chapter 13 adversary proceeding against the IRS before Judge Conrad. Tudisco's complaint in the adversary proceeding raised the same two issues that he had asserted in the plan proceeding.

Judge Eisenberg held a hearing on October 28, 1997, and disposed of the lien but not the dischargeability question.[1] Not surprisingly, in light of Judge Eisenberg's decision, the adversary proceeding before Judge Conrad addressed only Tudisco's dischargeability claim, and Judge Conrad's order of July 30, 1998, dismissing the adversary proceeding, made explicit reference only to this issue.

Following Tudisco's timely appeal of Judge Conrad's dismissal order, the district court considered both the dischargeability and lien issues. It affirmed the bankruptcy court's decision that Tudisco's

empt property is subject to a lien, all other issues are same as addressed in the adversary proceeding pending before Judge Conrad, matters are adjourned pending resolution of adversary, submit order on exemption."

tax debt was nondischargeable under 11 U.S.C. § 523(a)(1)(C). The district court also held that it lacked jurisdiction over the lien issue because (1) Judge Eisenberg's decision "was not embodied in a separate written order or entered as a judgment" and was therefore not a final, appealable order, and (2) had it been a final order, appeal from it would have been untimely.[2] In dicta, the district court went on to note that the bankruptcy court had ruled correctly on the underlying substantive issue, since, under 26 U.S.C. § 6321 and 11 U.S.C. § 522(c)(2)(B), a debtor's exempt assets, including a pension, are subject to attachment by an IRS lien.

## DISCUSSION

### A. STANDARD OF REVIEW

■ The district court's order affirming the bankruptcy court is "subject to plenary review." *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988 (2nd Cir.1990). This court "review[s] conclusions of law de novo, and findings of fact under a clearly erroneous standard." *Id.*

### B. DISCHARGEABILITY ISSUE

■ A debtor who files successfully under Chapter 7 of the Bankruptcy Code generally receives a complete discharge from pre-petition debts. See 11 U.S.C. § 727(b) (1994). Certain debts are, however, excepted from discharge. See 11 U.S.C. § 523 (1994). In particular, 11 U.S.C. § 523(a)(1)(C) excepts from discharge any tax debt "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." The government invokes this exception and claims that Tudisco's tax debt was not discharged in his prior Chapter 7 filing. The government does not argue that Tudisco filed a fraudu-

lent return, but contends instead that he willfully evaded taxes.

Although this court has yet to interpret the willfulness exception under § 523(a)(1)(C), we benefit from the analyses of six other circuits. See *United States v. Fegeley (In re Fegeley)*, 118 F.3d 979 (3rd Cir.1997); *In re Birkenstock*, 87 F.3d 947 (7th Cir.1996); *Dalton v. Internal Revenue Service*, 77 F.3d 1297 (10th Cir.1996); *Bruner v. United States (In re Bruner)*, 55 F.3d 195 (5th Cir.1995); *Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153 (11th Cir.1995); *Toti v. United States (In re Toti)*, 24 F.3d 806 (6th Cir.1994). The interpretations given to this exception by the other circuits, while not completely uniform, compare *Haas*, 48 F.3d at 1156, with *Bruner*, 55 F.3d at 200, see infra, all support the conclusion that the exception bars discharge of Tudisco's tax debt.

■ The willfulness exception consists of a conduct element (an attempt to evade or defeat taxes) and a mens rea requirement (willfulness). See *Griffith v. United States (In re Griffith)*, 174 F.3d.1222, 1224 (11th Cir.1999); *In re Fegeley*, 118 F.3d at 983; *In re Birkenstock*, 87 F.3d at 951. We address each of these in turn.

Most circuits have held that a simple nonpayment of taxes does not satisfy § 523(a)(1)(C)'s conduct requirement. Thus, the Eleventh Circuit concluded that mere knowledge of a tax debt, accompanied by nonpayment, could not render a tax debt nondischargeable under the exception. See *In re Haas*, 48 F.3d at 1156. As the In re Haas court noted, "the defining characteristic of all debtors—honest and dishonest, alike—[is] insufficient resources to honor all of [their] obligations." *Id.* A broad reading of the exception—rendering nondischargeable any tax debts, except those "discovered . . . in the course of . . . bankruptcy proceedings," *id.* at 1155—would eviscerate the basic "fresh

2. Federal Rule of Bankruptcy Procedure 8002(a) requires that a notice of appeal be filed within ten days of a final order. The August 6, 1998, notice of appeal was filed more than ten days after Judge Eisenberg's October 28, 1997, order.

start" policy of the Bankruptcy Code for the "honest but unfortunate debtor." *Id.* at 1156. The court buttressed this conclusion by contrasting the language of the Chapter 7 exception with that of provisions of the Internal Revenue Code, which penalize "attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof." *Id.* at 1156–57 (quoting 26 U.S.C. § 7201 (1994) and also looking to language of 26 U.S.C. §§ 6531(2), 6653, 6672 (1994)). "The omission of the words 'or payment thereof,'" from the bankruptcy exception, the In re Haas court concluded, "indicates that Congress did not intend that a failure to pay taxes, without more, should result in the nondischargeability of a debtor's tax liabilities in bankruptcy." *In re Haas,* 48 F.3d at 1157. Other courts have reached similar conclusions. See *In re Fegeley,* 118 F.3d at 983; *In re Birkenstock,* 87 F.3d at 951; *Dalton,* 77 F.3d at 1301.

In re Haas has, however, received some criticism. See *In re Bruner,* 55 F.3d at 200. After disapproving of the In re Haas court's analysis, insofar as it contrasted § 523(a)(1)(C) with provisions of the Internal Revenue Code, the Fifth Circuit in In re Bruner took the position that the bankruptcy exception "surely encompasses both acts of commission as well as culpable omissions." *Id.*[3]

To the extent that In re Haas and In re Bruner actually do conflict, we need not, however, decide between them. Because Tudisco engaged in more than "mere nonpayment," his conduct constitutes an attempt to evade or defeat taxes under either standard. His failure to pay his taxes was accompanied by a failure to file his tax returns, at least until 1992. While he may not have transferred assets or created shell corporations, cf. *In re Birkenstock,* 87 F.3d at 952 (finding the conduct element satisfied based on a failure to pay, a failure to file, and the creation of a shell

trust); *Bruner,* 55 F.3d at 200 (finding the conduct element satisfied based on a failure to pay, a failure to file, a resort to an "inordinate number of cash transactions," and the creation of a "shell entity"), Tudisco did submit a patently false affidavit to his employer. On its face, the affidavit was clearly intended to establish Tudisco's exemption from income tax withholding. Under the circumstances, we conclude that the bankruptcy court's finding—that Tudisco attempted to evade or defeat federal income taxes—is not clearly erroneous.

Similarly, the finding that Tudisco "willfully" evaded taxes is not reversible. The mens rea requirement of § 523(a)(1)(C) mandates that the debtor's conduct be undertaken "voluntarily, consciously or knowingly, and intentionally." *Dalton,* 77 F.3d at 1302; see also *In re Bruner,* 55 F.3d at 197; *In re Toti,* 24 F.3d at 809.

Tudisco himself conceded that he knew that he had to pay taxes. At his trial, he retracted this statement and instead claimed that several years of research had led him to believe that he was not obliged to pay taxes. When asked to identify the sources that supported this conclusion, he responded with evasive answers such as "books" or "people that I met, travelers from different parts of the country," whose names he had long since forgotten. Given these facts, the bankruptcy court could reasonably have rejected his retraction.

There is sufficient evidence to support the conclusion that Tudisco willfully sought to evade his federal tax obligations. The district court therefore properly affirmed the bankruptcy court's finding on this issue.

## C. LIEN ISSUE

The court below incorrectly held that it lacked jurisdiction over the lien issue. But because we find that Tudisco's claim fails

---

**3.** In re Haas has also been criticized by a later panel in its own circuit. See *In re*

*Griffith,* 174 F.3d at 1225–27.

on the merits, we affirm the district court's decision upholding the bankruptcy court's dismissal of the adversary proceeding.

### 1. Jurisdiction

 The district judge concluded that jurisdiction did not exist under 28 U.S.C. § 158(a) because Judge Eisenberg's order on the lien issue in the plan proceeding was not an appealable final order.[4] Had it been final, the court added, the appeal from it would not have been timely under Federal Rule of Bankruptcy Procedure 8001, which provides that a notice of appeal must be filed within ten days.

Judge Eisenberg's order was in fact not final when issued and had not become final by the date of Tudisco's appeal because the plan proceeding had not then concluded. Perhaps as a result, Tudisco never appealed from it.[5] Accordingly, we agree that the district court lacked jurisdiction to review any part of the plan proceeding.

The fact that the district court lacked jurisdiction over Judge Eisenberg's order in the plan proceeding, does not, however, mean that the district court lacked jurisdiction over the lien issue. Tudisco's complaint in the adversary proceeding raised both the dischargeability question and the lien issue. In order for Judge Conrad to dismiss the case with prejudice—which he did—he had to reach a decision on the merits of all the issues in Tudisco's complaint. Cf. Fed.R.Civ.P. 41(b) (providing

that an involuntary dismissal "operates as an adjudication upon the merits"). Therefore, a rejection of Tudisco's position on the lien issue was necessarily, if only implicitly, a part of the final dismissal order of the bankruptcy court. As a result, the district court had jurisdiction pursuant to 28 U.S.C. § 158(a), and we, in turn, have jurisdiction under 28 U.S.C. § 158(d) (giving the courts of appeals jurisdiction over final decisions by district courts).

### 2. Merits

 We must, therefore, reach the merits of Tudisco's claim that the tax lien cannot reach his exempt assets.

In the plan proceeding, the IRS filed a proof of claim, indicating $179,001.81 as a secured debt. Tudisco objected, arguing, inter alia, that this figure represented his accumulated "retirement," and that his retirement was an exempt asset.

Both Tudisco and the government have assumed, but not demonstrated, that Tudisco's pension is indeed exempt. See 11 U.S.C. § 522(b) (authorizing certain property to be exempted from the estate and thereby to escape liquidation in satisfaction of creditors' claims). We need not decide whether this is in fact the case. As the government correctly argues, even if the pension is exempt, the tax lien nevertheless attaches.

---

4. The district court also noted that the order was not final because it had not been reduced to writing. But whether an order is final turns not on whether it was written or oral. Rather, an order is final, and thus appealable, in the bankruptcy context, if it "completely resolve[s] all of the issues pertaining to a discrete claim, including issues as to proper relief." *Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 3 F.3d 49, 53 (2d Cir.1993) (emphasis omitted); see also *LTV Steel Co. v. United Mine Workers (In re Chateaugay Corp.)*, 922 F.2d 86, 90 (2nd Cir. 1990) (stating that a bankruptcy order is final for appeal purposes if it "resolve[s] discrete disputes within the larger case ... ").

5. While Tudisco could have taken an interlocutory appeal of Judge Eisenberg's ruling pursuant to 28 U.S.C. § 158(a)(3) (authorizing appeal from interlocutory orders of bankruptcy court "with leave" of the district court), he was not required to do so. Cf. *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1283 n. 1 (2nd Cir.1990) (noting that § 158(a) "authorizes district courts to hear appeals from interlocutory orders by discretionary leave of the district court" (emphasis added)); see also *Elliott v. Four Seasons Properties (In re Frontier Properties, Inc.)*, 979 F.2d 1358, 1362–64 (9th Cir.1992) (trustee did not waive an issue by failing to bring an interlocutory appeal).

Under 26 U.S.C. § 6321, a tax liability gives rise to a lien, which attaches to "all [of the taxpayer's] property and rights to property." The Supreme Court has given an expansive reading to this language, stating that it "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce*, 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); see also *Bourque v. United States (In re Bourque)*, 123 F.3d 705, 706 n. 2 (2nd Cir.1997) (quoting 11 U.S.C. § 522(c)(2)(B) in discussing 26 U.S.C. § 6321: " '[A] tax lien, notice of which is properly filed,' is effective against exempt property ... and may not be avoided."). As a result, even if Tudisco's retirement funds are exempt from the bankruptcy estate, they are nevertheless subject to a tax lien.

### CONCLUSION

In light of Tudisco's acknowledged failure to pay his taxes, his failure to file his tax returns until 1992, and his submission of false withholding statements to his employer, the finding that he willfully sought to evade or defeat payment of taxes was not clearly erroneous, and his tax liability was, therefore, nondischargeable. Since, moreover, a properly filed tax lien is effective even against property exempt from the bankruptcy estate, the bankruptcy court was correct in dismissing Tudisco's adversary proceeding. Accordingly, we AFFIRM the decision of the district court upholding that dismissal.