In re Ellis Jude BRUCE, Debtor.

Pauline H.L. Gordon, Plaintiff,

v.

Ellis June Bruce, a/k/a Jude Ellis Bruce, a/k/a Jude Bruce, Defendant.

In re Melany S. Jervis, Debtor.

Pauline H.L. Gordon, Plaintiff,

v.

Melany S. Jervis, a/k/a Melany S. Bruce, a/k/a Melany S. Rosa, Defendant.

Bankruptcy Nos. 00–21972–BM, 00–24362–BM.

Adversary Nos. 00–2263–BM, 00–2465–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

May 29, 2001.

634

David L. Beyer, Ebensberg, PA, for plaintiff.

Theresa C. Homady, Ebensberg, PA, for defendants.

## Complaint To Determine Dischargeability Of Debt

BERNARD MARKOVITZ, Bankruptcy Judge.

### *MEMORANDUM OPINION*

Plaintiff Pauline Gordon seeks a determination that a loan in the amount of $25,000.00 she made to debtors for use in operating their business is excepted from discharge by § 523(a)(2)(A) of the Bankruptcy Code. She avers that debtors obtained the money by making the false pretense or false representation that they were married to one another.

Debtors deny ever making such a false representation or pretense to debtor and maintain that the debt is dischargeable.

We conclude, for reasons set forth below, that the debt is *not* excepted from discharge by § 523(a)(2)(A).

### – FACTS –

Debtors began operating an auto repair business known as Euro Auto Engineering in Johnstown, Pennsylvania, in November of 1997. They began repairing a vehicle owned by plaintiff shortly after opening the business.

Debtors are not married to one another. They have cohabitated since 1992 and have three children under the age of five years. Both of them were, however, married to other individuals before they began cohabitating. Debtor Jervis was separated from her spouse in 1985 but never obtained a divorce. Debtor Bruce was divorced from his spouse in 1985.

Plaintiff provided debtors with $25,000.00 in March of 1998 for use in operating their business.

On March 2, 1998, debtors executed a note prepared by plaintiff wherein they promised to repay the sum of $25,000.00 with interest accruing at the rate of ten percent per annum. The note provided that the interest was payable in four successive installments in the amount of $625.00 beginning on June 1, 1998. The remaining installments were payable "on the same date of each month thereafter".

At plaintiff's behest debtors executed a second note several months later wherein they promised to pay the sum of $25,000.00 with interest accruing at the rate of ten percent per annum. Said interest was payable beginning on June 1, 1998, in successive monthly installments in the amount of $625.00. The principal amount of $25,000.00 was payable on or before March 2, 2000. The note, which was drafted by plaintiff's attorney, also was dated March 2, 1998, even though it was executed long after that date.

At some point in time after execution of the first note but before execution of the second, debtors attempted to make an installment payment on the note. Plaintiff refused their tender and told debtors to wait until later. Debtors made no payments after the second note was executed.

Plaintiff came to believe prior to March of 1998 that debtors were husband and wife. While eavesdropping she overheard a telephone conversation debtor Jervis had with an unidentified third person in which she referred to debtor Bruce as "her husband". Debtors at times held themselves out to others as husband and wife to avoid having to explain why they lived together and had children.

Debtor Bruce filed a voluntary chapter 7 petition on March 17, 2000. The schedules accompanying the petition identified plaintiff as having an undisputed unsecured nonpriority claim in the amount of $27,500.00 for a "loan made to establish a business".

Debtor Jervis filed a voluntary chapter 7 petition of her own on June 8, 2000, Her schedules also identified plaintiff as having an undisputed unsecured nonpriority claim in the amount of $27,5000.00 for a "loan made to establish a business".

Plaintiff initiated the above adversary actions against debtors on June 26, 2000. She seeks a determination that the debt owed to her by debtors is excepted from discharge by § 523(a)(2)(A) of the Bankruptcy Code because debtors allegedly obtained the above money from her by virtue of the false pretense or false representation that they were married to one another.

The cases were tried on March 30, 2001, at which time the parties were given an opportunity to offer evidence on the issues presented.

## – DISCUSSION –

■ The overarching purpose of the Bankruptcy Code is to relieve debtors from the weight of oppressive indebtedness and to provide them with a "fresh start". *Insurance Company of North America v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir.1995). This "fresh start" is available, however, only to the "honest but unfortunate debtor". *U.S. v. Fegeley (In re Fegeley)*, 118 F.3d 979, 982 (3d Cir.1997) (citing *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991)).

■ Certain debts owed by an individual debtor are excepted from discharge. For instance, a debt for money is excepted from discharge to the extent the money is obtained by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). False pretenses and a false representation are different for pur-

poses of this provision. The former involves an implied misrepresentation that is meant to create and foster a false impression whereas the latter involves an express misrepresentation. *In re Scarlata*, 127 B.R. 1004, 1009 (N.D.Ill.1991).

■ Exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors in bankruptcy. *In re Cohn*, 54 F.3d at 1113.

According to plaintiff, the debt owed to her by debtors is excepted from discharge by § 523(a)(2)(A) because debtors obtained $25,000.00 from her by false pretenses or a false representation. Debtors, she maintains, led her to falsely believe that they were married to one another when she loaned them $25,000.00 for use in their business. Had she realized that debtors were not married to one another, plaintiff insists, she would not have loaned them the money.

Prior to March 2, 1998, debtors occasionally indicated to individuals other than plaintiff that they were married to avoid having to explain their living together and having children. Also, at some undetermined time prior to March 2, 1998, plaintiff overheard a telephone conversation debtor Jervis had with an unidentified individual in which Jervis referred to debtor Bruce as "her husband".

■ To prevail under § 523(a)(2)(A), plaintiff must establish that: (1) debtors obtained money from her by making a false representation or a false pretense; (2) debtors knew that the representation or pretense was false when they made it; (3) debtors made the representation or pretense with intention to deceive plaintiff; (4) plaintiff relied on the false representation or pretense; and (5) plaintiff suffered a loss as a proximate result. *American Express v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir.), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1824, 137 L.Ed.2d 1031 (1997).

■ Even though § 523(a)(2)(A) does not expressly so provide, the false pretense or representation must be material and the perpetrator thereof must intend to deceive the party to whom it is directed. "Common sense would balk" were it otherwise. *Field v. Mans*, 516 U.S. 59, 68, 116 S.Ct. 437, 442–43, 133 L.Ed.2d 351 (1995).

■ An untruth is "material" if it is considered important enough to influence a creditor's decision to extend credit. *In re Cohn*, 54 F.3d at 1114.

■ Intent to deceive may be inferred from the totality of the circumstances of a case. *In re Rembert*, 141 F.3d 277, 282 (6th Cir.), *cert. denied*, 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998). It may be inferred when the facts and circumstances present a picture of deceptive conduct on the debtor's part. *In re Hashemi*, 104 F.3d at 1125.

■ The creditor's reliance need not be reasonable; it need only be justifiable. *Field*, 516 U.S. at 68, 116 S.Ct. at 442–43. The falsity of a representation or pretense does not have to be so "well crafted" as to be virtually undetectable before a creditor's reliance on it is justifiable for purposes of § 523(a)(2)(A). Reliance may be justifiable even though its falsity would have been detected had there been an investigation. *Field*, 516 U.S. at 69, 116 S.Ct. at 444.

For instance, a buyer's reliance upon the representation of a seller of land that it is unencumbered may be justifiable even if the buyer could have walked across the street to the courthouse and easily learned of an unsatisfied mortgage against the land. *Id.* Contributory negligence is no bar to recovery because intentional misrepresentation is an intentional tort. *Id.*

Justifiability does not, as is the case for reasonableness, depend on a community standard that applies to all cases. It instead depends on the qualities and characteristics of the particular individual who relies on a particular representation. *Field*, 516 U.S. at 71, 116 S.Ct. at 444. This does not mean that justifiability has no bounds or limits. One must "use his senses" and cannot recover if he "blindly relies" on a misrepresentation whose falsity would be "patent" to him had he utilized the opportunity to make a "cursory" examination or investigation. *Id.* In short, one's reliance is not justifiable for purposes of § 523(a)(2)(A) if the falsity of the representation would be obvious after a cursory examination.

The burden of proving that a debt is excepted from discharge under § 523(a)(2)(A) lies with the party seeking to have the debt excepted from discharge. They must do so by a preponderance of the evidence. *Grogan*, 498 U.S. at 291, 111 S.Ct. at 661.

Plaintiff has not established all of the above-enumerated required elements of § 523(a)(2)(A) by a preponderance of the evidence.

She has not, for instance, established the first requirement by a preponderance of the evidence.

Plaintiff offered no evidence that debtors ever expressly represented *to her* that they were married to one another. The only evidence concerning an express statement was a reference by debtor Jervis to debtor Bruce as "her husband". The remark was made, however, not to plaintiff but to an unidentified individual to whom Jervis was speaking on the telephone. Plaintiff overheard the remark while eavesdropping.

Plaintiff also offered no evidence that debtors ever implied *to her* by their words or actions that they were married. Living together and having children, standing alone, does not imply in today's society that individuals are married. To the extent that plaintiff inferred from this that debtors were married, the inference was entirely the result of misconceptions plaintiff had about individuals who live together and have children.

Moreover, even assuming that debtors made such false representations or pretenses to her, plaintiff has not shown to our satisfaction that they were *material* to her decision to provide debtors with money for their business. Plaintiff has not shown that debtors' marital status played any role in her decision. The evidence presented indicates that she provided the money out of affection for debtors and their children or because she believed she could realize a return on the loan. Plaintiff's contention that she would not have loaned them money had she known the truth, we are convinced, is an after-the-fact invention meant to leave open the possibility that she might in the future recoup her loss.

Plaintiff also has failed to establish the fourth of the above requirements. Even if debtors intended to induce her to falsely believe that they were married, plaintiff has not shown by a preponderance of the evidence that she actually, let alone justifiably, relied on the false representation or pretense. There is, we have indicated, no good reason to conclude that plaintiff's belief concerning debtors' marital status was a factor in her decision to lend them money. It is far more likely that she did so because she liked debtors and their children or because she hoped to realize a monetary return on the loan.

Finally, plaintiff also has failed to establish the fifth of the above requirements by a preponderance of the evidence. Because there is no basis for concluding that any

misrepresentation, whether express or implied, debtors may have made concerning their marital status played any role in plaintiff's decision to lend them money, there also is no basis for concluding that the economic loss she suffered when debtors failed to repay the loan was the result of any reliance at all on her part on such misrepresentation.

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** this **29th** day of **May,** 2001, in accordance with the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that the debt owed by debtors to plaintiff Pauline Gordon is **NOT EXCEPTED FROM DISCHARGE.** Said debt is **DISCHARGEABLE.**

It is **SO ORDERED.**